PATTERSON, Justice.
L. V. Williams was convicted of murder by the Circuit Court of Washington County. He was sentenced to life in the State Penitentiary and, on appeal, contends the trial court erred by permitting the state to introduce incriminating testimony against him through the use of leading questions.
On the morning of April 5, 1973 the body of Dalton Day was found lying near the intersection of two public roads in Washington County. An autopsy disclosed that he had been shot and killed by a small caliber weapon. The bullet which had caused the death was recovered during the autopsy and was kept by the sheriff.
In May, 1974, the appellant was charged with the murder of Day as the result of information supplied to the authorities by Frances Hartman and Charles Smith, her brother. Smith had been arrested on a charge of burglary and apparently his sister hoped to aid him by identifying the appellant as the murderer of Day. Smith, without having an opportunity to confer with his sister, also implicated the appellant with the death of Day.
According to the testimony of Frances Hartman, she and the appellant were at her home on the evening preceding the murder where they were later joined by her brother. During the course of the evening, she observed the appellant cut the nose of a bullet from a cartridge with his knife. Thereafter, about 3:00 a. m., the appellant left, telling her that he “had to go do something.” He returned about 6:00 a. m., remained for a few minutes and departed.
She testified the appellant returned the following evening and told her he had killed Dalton Day for his money. He related some of the details to her and threatened to kill her if she told anyone of the shooting.
Smith testified that he lived with his sister and corroborated the essential details of her testimony. He related that on the evening preceding the murder he observed the appellant cut the nose off of six bullets and that the appellant left the house sometime after 2:00 a. m. He stated that about a month after the shooting he overheard the appellant tell his sister that she was the only one who knew about Day’s death and if she told anyone he would kill her.
A firearms expert from the Federal Bureau of Investigation testified that he had examined the bullet recovered from Day’s body. Although there was insufficient evidence to identify the weapon from which the bullet was fired, it was nevertheless determined to be a .22 caliber pistol. Moreover, he testified the nose of the bullet, submitted to him for examination by the sheriff, had been cut off prior to its being fired.
The appellant’s defense was an alibi. He offered witnesses, including his wife and brother-in-law, to testify that he was not at the Hartman residence on the night of the murder or the following night. He also offered testimony that Charles Smith did not live with his sister, Frances Hartman, at the time of Day’s death. He testified in his own behalf and denied that he had shot Day and denied the testimony of *381 both Frances Hartman and her brother. He admitted that he owned a .22 caliber pistol but denied ownership of it in 1973.
The jury was thus presented with a conflict of evidence which it resolved by its verdict of guilty. A review of the record reveals ample evidence to support the jury’s verdict.
The appellant contends, however, that the trial court erroneously permitted the state to introduce some of its evidence through Frances Hartman by the device of leading and suggestive questions to the prejudice of the appellant.
He argues that before the state may cross-examine its own witness, it must first establish as a predicate two elements, hostility and surprise. He suggests the record fails to disclose that Frances Hartman was either hostile to the state or that it was surprised by her testimony. He contends also that permitting the state to lead the witness cannot be justified by way of recalcitrance or reluctance on her part since the record is devoid of either propensity.
The thrust of the appellant’s contention is that the use of leading questions by the state destroyed the effectiveness of the defendant’s cross-examination in that it was introduced in such a manner that it became difficult for the defendant to impeach her by illuminating the contradictions and inconsistencies in her testimony by his cross-examination.
The appellant concedes that a trial court does have discretion in allowing the state to lead witnesses under certain circumstances. He submits however there was no present basis permitting the court to exercise its discretion and this indulgence was prejudicial to the extent that the appellant was denied a fair trial.
A review of the record indicates that Ms. Hartman was a reluctant and recalcitrant witness. Oftentimes she did not answer questions propounded to her until directed to do so by the court. Even when she did answer, the court many times had to repeat her answers for the benefit of the attorneys and the jury. We note that many questions were leading and a few could probably be construed as suggestive, but we are unable to discern any reversible prejudice therefrom. We think, under the circumstances, the obvious reluctance and recalcitrance of the witness, whether or not caused by the appellant’s threats of death, were sufficient for the lower court to indulge leading questions in its judicial discretion. The trial court had the opportunity to observe the demeanor of the witness and the circumstances of the trial, and this being so, we surely cannot state the discretion was manifestly abused.
In Summerville v. State, 207 Miss. 54, 41 So.2d 377 (1949), we held the discretion exercised by a trial judge is reviewable on appeal but that reversal will not follow unless the judicial discretion has been manifestly abused and the defendant thereby deprived of a fair trial. We stated:
. . . “To justify a reversal because of the allowance of a leading question, not only is it necessary that there should have been a manifest abuse of discretion, but it is also necessary that the question shall have influenced the answer and that injury resulted.” 207 Miss, at 64-65, 41 So.2d at 379.
Under the present circumstances we think the trial court was in the best position to judge the necessity and propriety of allowing leading questions. It had the opportunity to observe the witness and to determine the best course of conduct necessary to elicit the truth and yet safeguard the rights of the accused. After reviewing the record, we cannot say the discretion was abused or that the accused was deprived of a fair and impartial trial.
The cause is therefore affirmed.
Affirmed.
GILLESPIE, C. J., RODGERS, P. J., and INZER, ROBERTSON, SUGG and WALKER, JJ., concur.